UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CIVIL ACTION NO. 08-310-KKC

JAMES WILKINSON,                                                                    PLAINTIFF

v.                                         **OPINION AND ORDER**

MICHAEL J. ASTRUE,                                                                  DEFENDANT
Commissioner of Social Security

* * * * * * *

This matter is before the Court on the parties' cross motions for summary judgment. [R.

12, 13].  For the reasons stated below, Plaintiff's motion for summary judgment [R. 12] is denied

and Defendant's motion for summary judgment [R. 13] is granted.

**I. Introduction**

Plaintiff filed applications for disability insurance benefits and supplemental security

income on June 21, 2005.  His claims were denied initially and upon reconsideration.  At

Plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Roger Reynolds

on September 25, 2006, in Lexington, Kentucky.  Plaintiff appeared and testified at the hearing,

as did Martha Goss, a vocational expert.  After review of the record, the ALJ denied Plaintiff's

application in a written decision issued on October 25, 2006.  The Appeals Council denied

Plaintiff's request for review, and, therefore, the ALJ's decision stands as the Commissioner's

final decision and is now ripe for review.

**II. Discussion**

**A. Standard of Review**

When reviewing decisions of the Social Security Agency, the Court is commanded to

uphold the Agency decision, "absent a determination that the Commissioner has failed to apply

the correct legal standards or has made findings of fact unsupported by substantial evidence in

the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation

marks and citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284,

285-86 (6th Cir. 1994).  The Court is required to defer to the Agency's decision "even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*,

336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve

conflicts in the evidence, or decide questions of credibility.  *Nelson v. Comm'r of Soc. Sec.*, 195

Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the

ALJ's opinion directly.  *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to

determine whether a social security disability claimant qualifies as legally disabled, and is thus

deserving of disability insurance benefits and supplemental security income.  *See* 20 C.F.R. §

404.1527(e)(1).  To make this determination, the ALJ follows a five-step sequential analysis.

First, the claimant must show that she is not engaging in substantial gainful activity.  *Id.* §

404.1520(a).  If the claimant is engaging in substantial gainful activity, then he is not disabled

regardless of his medical condition, age, education, or work experience.  *Id.* § 404.1520(b).

Second, the claimant must show that he has a mental or physical impairment or combination of

impairments that is severe.  *Id.* § 404.1520(a).  If the claimant does not have a severe mental or

physical impairment or combination of impairments, he is not disabled.  *Id.* § 404.1520(c).

Third, the ALJ must determine whether the claimant's impairment or combination of

impairments meets or medically equals a listed impairment.  *Id.* § 404.1520(a).  If the claimant's

impairment or combination of impairments meets or medically equals a listed impairment, then

he is disabled.  *Id.* § 404.1520(d).  If not, then the ALJ must determine the claimant's residual

functional capacity before proceeding to the fourth step.  *Id.* § 404.1520(e).  In the fourth step,

the ALJ determines if the claimant has the residual functional capacity to perform his past

relevant work.  *Id.* § 404.1520(a).  If the claimant cannot perform his past relevant work, then the

burden shifts to the Commissioner in the final step to show that there is sufficient work in the

national economy that the claimant can perform given his residual functional capacity, age,

education, and work experience.  *Id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir.

2003).  If no such work exists, then the claimant is legally disabled.  *Id.* § 404.1520(a).

**C. The ALJ's Decision**

In his written decision, the ALJ outlined the five-step analysis set forth in the Social

Security Administration's disability regulations and found at 20 C.F.R. §§ 404.1520 and 416.920.

[Administrative Transcript ("Tr."), p. 16-17].  The ALJ first determined that Plaintiff has not

engaged in substantial gainful activity since the alleged onset date of her disability. [Tr. 17]. The

ALJ then determined that Plaintiff suffers from the following severe impairments: epilepsy, and

polyarthritis of ankles and elbows. [Tr. 17]. The ALJ next concluded that Plaintiff's

impairments, individually or in combination, neither meets nor medically equals a listed

impairment. [Tr. 17]. Further, the ALJ determined that Plaintiff has the residual functional

capacity to perform light and sedentary work subject to the following limitations: no climbing of

ropes, ladders, or scaffolds; requires a sit/stand option at one-hour intervals; no operation of foot

pedal controls; no work at heights, around industrial hazards or concentrated vibration; no

commercial driving; no work around concentrated temperature extremes or excess humidity. [Tr.

17]. The ALJ subsequently found that Plaintiff cannot perform his past relevant work. [Tr. 19].

Finally, the ALJ found that there are a significant number of jobs in the national economy that

Plaintiff can perform despite his limitations, and thus he is not disabled. [Tr. 20].

**D. Analysis**

Plaintiff raises two arguments on appeal. First, he asserts that his seizure disorder meets

the requirements of Listings 11.02 or 11.03. Second, he argues that the hypothetical question

presented to the vocational expert failed to properly incorporate the unpredictable nature of

Plaintiff's seizures.

**1. Listings 11.02 and 11.03**

In the third step of the ALJ's analysis, a claimant bears the burden for establishing that

his impairment meets or medically equals a listed impairment. *Foster v. Halter*, 279 F.3d 348,

354 (6th Cir. 2002). To meet this burden, the claimant must demonstrate that his impairment

satisfies all the criteria of a listed impairment. 20 C.F.R. § 404.1525(c)(3). Plaintiff argues that

his seizure disorder satisfies the requirements of Listings 11.02 and 11.03.  Listings 11.02 and

11.03 state:

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented
> by detailed description of a typical seizure pattern, including all associated
> phenomena; occurring more frequently than once a month in spite of at least 3
> months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with
> activity during the day.
>
> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal),
> documented by detailed description of a typical seizure pattern, including all
> associated phenomena; occurring more frequently than once weekly in spite of at
> least 3 months of prescribed treatment. With alteration of awareness or loss of
> consciousness and transient postictal manifestations of unconventional behavior
> or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.02, 11.03.  Additionally, the criteria of

Listings 11.02 and 11.02 can only be applied "if the impairment persists despite the fact that the

individual is following prescribed antiepileptic treatment."  Id. § 11.00A.

Substantial evidence supports the ALJ's finding that Plaintiff's epilepsy does not meet

either Listing 11.02 or 11.03.  Most importantly, the medical evidence indicates that Plaintiff

failed to take his prescription medication as directed.  During an appointment on October 31,

2005, Plaintiff reported that he experienced a seizure the prior month, but noted that he had been

out of his medication for about a week. [Tr. 215].  In December 2005, Plaintiff was hospitalized

for seizures.  However, the level of Dilantin, Plaintiff's seizure medicine, was undetectable at

that time and the treating physician questioned his compliance. [Tr. 163, 166].  Plaintiff's

physician again questioned his medication compliance in April, 2006, after medical tests

indicated low levels of prescription medication. [Tr. 344]. Plaintiff was again hospitalized because of seizures in July, 2006, and he admitted that he had stopped taking his medication the previous week. [Tr. 278]. Hospital physicians stressed the importance compliance with Plaintiff. [Tr. 279]. Plaintiff reported more seizures in October, 2006, and he was again found to have subtherapeutic levels of his prescribed medication. [Tr. 355].

Further, the medical evidence fails to establish that Plaintiff's impairment meets the frequency requirements of Listings 11.02 and 11.03. Under Listing 11.02, Plaintiff must show that his severe seizures occur more frequently than once a month. Under general social security principles, this frequency must be demonstrated for a continuous period of at least twelve months. 20 C.F.R. § 404.1509. In this case, medical records demonstrate that Plaintiff suffered from multiple seizures in June, July, August, September[1], and December, 2005. [Tr. 206, 209, 183, 201, 204, 217, 215, 163, 179, 198]. However, Plaintiff's severe seizures occurred less frequently thereafter. Records indicate that Plaintiff suffered from seizures in March, June, July, August[2], and October, 2006. [Tr. 344, 260, 284, 285, 342, 448, 645]. Additionally, as noted, several of these events were preceded by periods of noncompliance with prescription medication. Accordingly, the record demonstrates that Plaintiff's severe seizures did not occur with the frequency required by Listing 11.02.

Under Listing 11.03, Plaintiff must prove that his minor seizures occurred more frequently than once a week. There is no indication from Plaintiff's medical records that these

---

[1]In October, 2005, Plaintiff reported a seizure from "last month". [Tr. 215].

[2]Although the reports conflict, it appears that Plaintiff had a seizure between July and October. [Tr. 448, 451].

minor seizures occurred with the required frequency.  The only evidence supporting such

frequency is Plaintiff's hearing testimony, in which he stated that he has smaller seizures once or

twice a week, although he had not had any seizures in the month prior to the hearing. [Tr. 705].

Additionally, the ALJ found Plaintiff's statements regarding the persistence of his symptoms to

be only partially credible.[3] [Tr. 19].  Accordingly, the ALJ's conclusion that Plaintiff's epilepsy

did not meet the requirements of Listing 11.03 is supported by substantial evidence in the record.

## 2. The Hypothetical Question

Plaintiff next argues that the ALJ failed to consider the unpredictable nature of his

seizures when finding that sufficient work exists in the national economy that Plaintiff can

perform.  Specifically, Plaintiff challenges the hypothetical question presented to the vocational

expert.  An ALJ may rely on testimony from a vocational expert in response to a hypothetical

question if that question accurately reflects the claimant's individual physical and mental

impairments.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

However, the hypothetical question presented need not include limitations that are not supported

by the record.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

During Plaintiff's hearing, the ALJ presented a hypothetical question to the vocational

expert incorporating the limitations from Plaintiff's residual functional capacity. [Tr. 727].  In

response, the vocational expert testified that there were jobs in the national economy that

Plaintiff could perform. [Tr. 727].  The ALJ then questioned the vocational expert on the effect

of absenteeism that might be associated with a seizure disorder. [Tr. 727-728].  Assuming that a

---

[3]The ALJ reached this finding after noting several inconsistencies between Plaintiff's testimony and evidence in the record, most notably that although Plaintiff "alleged that he is unable to sit more than 10 to 15 minutes, he sat for 1 hour at the hearing." [Tr. 19].

person would either miss a day of work of be forced to leave early if a seizure occurred, the vocational expert testified that weekly absenteeism would preclude employment, especially if such absenteeism was unpredictable. [Tr. 727-728].  The ALJ also testified that someone experiencing large seizures once a month and smaller seizures twice a week would probably not be employable, if those seizures could not be controlled. [Tr. 728-729].  Despite this testimony, the ALJ found that there are jobs in the national economy that Plaintiff can perform. [Tr. 20].

The ALJ's findings implicitly reject the limitations discussed with the vocational expert regarding absenteeism that might result from Plaintiff's seizure disorder.  The ALJ properly rejected these limitations because they are not supported by the record.  First, these limitations were based on the assumption that even small seizures would require Plaintiff to miss a day of work or leave early. [Tr. 727].  However, Plaintiff testified that small seizures usually affect him for no more than fifteen minutes. [Tr. 720].  The vocational expert also noted that if an individual was not constantly busy on the job, the employer may not even notice a minor seizure. [Tr. 730].  Additionally, the record demonstrates that Plaintiff's seizures are not entirely unpredictable.  As the ALJ noted, Plaintiff's seizures are often triggered by noncompliance with prescription medication and stress. [Tr. 18].  Plaintiff testified that his seizures are often preceded by head pain and triggered by heat or emotional excitement. [Tr. 703, 717, 718].  Finally, as the vocational expert indicated, the limitations discussed assume that Plaintiff's seizures are not controlled by medication. [Tr. 729].  The fact that Plaintiff's seizures are often triggered by his noncompliance negates this assumption.  Further, Plaintiff testified that he used to have more frequent seizures when he was unable to consistently take his prescription medication and that his current medication "works a lot better" than his prior medication. [Tr. 705].   In sum, the

record does not establish that Plaintiff's seizures would cause the degree of absenteeism considered by the vocational expert. Accordingly, the ALJ properly relied on the vocational expert's response to the hypothetical question including only the limitations contained in Plaintiff's residual functional capacity.

### III. Conclusion

Substantial evidence supports the ALJ's finding that Plaintiff is not disabled. Accordingly, the ALJ's decision must be affirmed.

Therefore, for the reasons stated, the Court HEREBY ORDERS:

(1) Plaintiff's Motion for Summary Judgment [R. 12] is **DENIED**; and

(2) Defendant's Motion for Summary Judgment [R. 13] is **GRANTED**.

Dated this 28th day of September, 2009.



**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**